KAREN L. LOEFFLER
United States Attorney

RETTA-RAE RANDALL
Assistant U.S. Attorneys
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
E-mail: rettarae.randall@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| UNITED STATES OF AMERICA, | ) | No. 3:09cr-00132-TMB-2 |
|---|---|---|
| Plaintiff, | ) | |
| | ) | **SENTENCING** |
| vs. | ) | **MEMORANDUM OF THE** |
| | ) | **UNITED STATES** |
| DEANNA A. SCAGLIONE | ) | |
| aka DEANNA POWERS | ) | |
| | ) | |
| Defendant. | ) | |

The United States files with the court its sentencing memorandum in the above captioned case pursuant to Local Criminal Rule 32.1(d), for the Imposition of Sentence now scheduled for September 2, 2010, at 2:00 p.m. The United States has no disagreements with the final revised presentence report dated August 18, 2010.

I.   **OFFENSE CONDUCT**

In the early morning hours of July 28, 2009, the defendant, Deanna Scaglione, was driving a car in downtown Anchorage.  Her co-defendant, Robert Gum, was riding in the front passenger seat.  They intended to single out and attack Native Alaskans.  First they hit a Native Alaskan woman in the chest with eggs and water balloons.  Then eggs were thrown at an Alaska Native male.  Scaglione and Gum continued driving around the downtown area and ultimately targeted the victim in this case, E.B.

Scaglione carried a digital flip-video recording device and used it to record her and Gum as they pursued, harassed, and assaulted E.B., an Alaska Native man they saw walking downtown Anchorage.  They took these actions, including threatening to harm him with a baseball bat and a gun, because of the man's race and ethnicity, and in order to interfere with his ability to enjoy the benefit, right and privilege of walking along streets and sidewalks owned and administered by the Municipality of Anchorage and the State of Alaska.  Scaglione subsequently posted two video recordings that she made of the incident with E.B. on YouTube.

U. S. v. Scaglione
3:09cr-00132-TMB-2                             2

As captured by her own statement on the video recording, Scaglione was downtown "egging Natives." Her victim, E.B., is an Alaska Native male who was walking along the city sidewalks and streets toward Beans Café, an Anchorage shelter that provides food and services to those in need. Scaglione and Gum pulled up along side of E.B. and threw eggs at him. As Scaglione recorded their actions, Gum verbally harassed E.B. and threw other objects at him from the vehicle. Gum told Scaglione that he missed and told her to turn around. Scaglione turned the vehicle around, and Gum threw another object at E.B. and told Scaglione to turn the car around again. Scaglione then stopped the vehicle, and Gum got out with an egg in his hand. He went around the car, and then got back inside.

E.B. attempted to get away from Scaglione and Gum, but they continued to pursue him. As Scaglione drove and operated the video recorder, Gum threw additional objects at E.B., and threatened "hey dog, you want to get shot?" and "we'll hit this nigger with a bat." Gum told Scaglione to pull over again, and he quickly got out and threw a water bottle at E.B. Gum then got back inside the car, and Scaglione followed E.B. in the car as he continued to try and walk away from them.

Scaglione and Gum then parked the car in the Geico Parking lot on the corner of 7th Avenue and C Street, and began pursuing E.B. on foot. Scaglione and Gum followed E.B. as he walked around the corner of the Geico building. Scaglione then directed the video camera at E.B. and announced "the Native we just f---ing punked is coming. He's coming, he's coming!" In the minutes that followed, E.B. repeatedly turned to Scaglione and Gum and asked them to leave him alone, but they continued to follow him down C Street, then across the street onto the sidewalk on 8th Avenue and along the street in front of Social Security Building. As they walked, Gum continued to throw objects at E.B., and together Scaglione and Gum made derogatory references to drinking liquor, yelling "I want my Monarch." Gum then came up right next to E.B. and threatened "If you really want to get hit hard, I'll hit you in the face. I'll knock your f---ing teeth out."

Scaglione next approached E.B. and pushed him in the back. On several occasions, as E.B. continued to walk away, he turned around and pleaded with them "Please don't bother me." His requests were met with statements from Gum such as "If you touch my sister I will cut you," and "I will kick you in the f---ing head." Gum also encouraged Scaglione to "kick him in the ass," which Scaglione proceeded to do. When E.B. again asked to be left alone, saying to them that he

isn't dumb, Scaglione replied, "You are dumb, you're a f---ing Native." Finally, E.B. saw a security officer in front of the Social Security building and walked toward him. At that point, Scaglione said "Is that a cop?," and then turned the video recorder to her own face to record herself saying "well, there's a cop so we have to end this. Bye."

Gum and Scaglione's pursuit of the victim only ended due to the intervention of a Federal Protective Services officer on duty in the area that morning of July 28, 2009. The officer saw an altercation and approached the individuals to separate them, when the Alaska Native male stated that the other two would not leave him alone, and were bothering him because he was an Alaska Native. The officer stayed with E.B. until Gum and Scaglione left the area.

After a complaint made to Crime Stoppers by individuals who saw the videos on YouTube, and investigation by the Anchorage Police Department and the FBI, Gum and Scaglione were arrested. Both admitted that the idea to find and harass Alaska Natives was Gum's, and Scaglione made the decision to video-tape and publish their actions. The eggs came from Scaglione's apartment.

## II. ADVISORY SENTENCE CALCULATIONS PURSUANT TO PRESENTENCE REPORT (PSR).

Base Offense Level (2H1.1(a)(2) (offense involved two or more participants)). . 12

    Victim related adjustment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . +3

Adjusted Offense Level . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Adjustment For Acceptance of Responsibility. . . . . . . . . . . . . . . . . . . . . . . . -2

Total Offense Level. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Criminal History Category. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I

Advisory Sentencing Range. . . . . . . . . . . . . . . . . . . . . . . . . . . . 12 - 18 months

## III. SENTENCING RECOMMENDATION.

Scaglione's history has been thoroughly documented in the pre-sentence report, and nothing has been presented by Scaglione to refute the facts set forth. A review of the factors under 18 U.S.C. § 3553(a) support a conclusion that a sentence above the minimum guideline calculation is called for in this case to reflect the seriousness of the offense and to promote respect for the law. No individual walking on the public streets in any community should be targeted for abuse; especially sinister is the individual being targeted just because of his race, color, religion or national origin. The victim in this case was targeted merely because he was an Alaska Native - crimes such as this one make everyone vulnerable to acts of hate and prejudice.

U. S. v. Scaglione
3:09cr-00132-TMB-2        6

Scaglione has no criminal history, but she has shown no respect for the law or for the rules of the court as evidenced by the revocation of her pretrial release. Documents seized from Scaglione's apartment show her racial animosity and the video-tapes show her intent. As the videos show, Scaglione was entertained and excited while stalking and abusing E.B. She kicked E.B. hard enough to cause him almost to fall. She then broadcast the victimization of E.B. to the world. The videos of the attacks show more than two youthful offenders not thinking about what they were doing or the consequences. E.B.'s pleas to be left alone did not give Gum or Scaglione pause. Instead they continued to intentionally and purposely stalk E.B., harassing him over many city blocks. Only intervention by a "cop" stopped them. To deter her and others with similar attitudes, a lengthy prison sentence is justified.

The United States therefore requests:

A. A sentence of 15 months in prison;

B. Three years of supervised release;

C. A mandatory special assessment in the amount of $100;

D. There is no restitution owed and the United States agrees that Scaglione has no ability to pay a fine.

E. The United States also agrees with the recommendation of the United States Probation Office that Scaglione should be evaluated for participation in a mental health treatment program.

RESPECTFULLY SUBMITTED this 26th day of August, 2010, in Anchorage, Alaska.

```
                                KAREN L. LOEFFLER
                                United States Attorney

                                 s/ Retta-Rae Randall
                                Assistant U.S. Attorney
                                Federal Building & U.S. Courthouse
                                222 West Seventh Avenue, #9
                                Anchorage, Alaska  99513-7567
                                Phone: (907) 271-5071
                                Fax: (907) 271-1500
                                E-mail: rettarae.randall@usdoj.gov
```

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26th, 2010,
a copy of the foregoing was served
electronically on Lance C. Wells,
and was placed at the front desk of the
USAO for Scott J. Waters,
Supervising U.S. Probation/Pretrial Services Officer.

s/Retta-Rae Randall
Office of United States Attorney

U. S. v. Scaglione
3:09cr-00132-TMB-2                      8

Case 3:09-cr-00132-TMB   Document 81   Filed 08/26/10   Page 8 of 8